594 A.2d 688

**Irvin V. UHLER**

v.

**Gloria T. UHLER, Appellant.**

Superior Court of Pennsylvania.

Argued April 25, 1991.

Filed July 23, 1991.

Robert A. Longo, Lancaster, for appellant.

Douglas Y. Flick, Lancaster, for appellee.

Before KELLY, POPOVICH and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the trial court's Order of August 16, 1990, denying the Master's recommendation of alimony to appellant, Gloria Uhler, but otherwise approving the Master's Report. Appellant contends that the trial court abused its discretion in denying her alimony. For the reasons that follow, we reverse the trial court's Order denying alimony and remand for proceedings consistent with this Opinion.

■ The parties were married on September 12, 1968. This was the third marriage for both parties. No children were born of the marriage. The parties separated in September of 1983, and husband filed a complaint in divorce. A Master was appointed on May 27, 1988. The Master held hearings on April 12, and June 6, 1989. On March 19, 1990, the Master filed his Report and Recommendation with the Court. In his report, the Master recommended that each party be awarded one-half of the marital estate. In addition, the Master recommended that husband pay alimony to wife in the amount of $900.00 per month until the death of either party. Husband filed timely exceptions to the Master's recommendation. In an Opinion and Order of August

16, 1990, the trial court affirmed all provisions of the Master's Report except for the payment of alimony, which it denied. A Decree in Divorce was entered on October 5, 1990, and, on October 9, 1990, wife filed the instant appeal.[1]

Appellant contends that the trial court abused its discretion in denying alimony. We note at the outset that an appellate court will reverse an order granting or denying alimony only for an abuse of discretion by the trial court. *See Grandovic v. Grandovic,* 387 Pa.Super. 619, 622–23, 564 A.2d 960, 962 (1989); *Geyer v. Geyer,* 310 Pa.Super. 456, 459, 456 A.2d 1025, 1026 (1983). An abuse of discretion will be found where the trial court failed to follow proper legal procedure or misapplied the law. *See Braderman v. Braderman,* 339 Pa.Super. 185, 190, 488 A.2d 613, 615 (1985).

Alimony and equitable distribution are interrelated in the Divorce Code. As stated by this Court in *Hess v. Hess,* 327 Pa.Super. 279, 475 A.2d 796 (1984):

> The Divorce Code was remedial and provided for economic fairness for both parties upon divorce through the vehicle of equitable distribution (Chapter 4) and alimony (Chapter 5). *Bacchetta v. Bacchetta,* 498 Pa. 227, 445 A.2d 1194 (1982); *Remick v. Remick,* 310 Pa.Super. 23, 456 A.2d 163 (1983); *Geyer v. Geyer,* 310 Pa.Super. 456, 456 A.2d 1025 (1983). Alimony and equitable distribution must be viewed as part of the legislative intention: to do economic justice. This is apparent in § 501(a) which requires that the court in determining the entitlement to alimony consider the property distributed equitably pursuant to Chapter 4.

*Id.* 327 Pa.Super. at 283–84, 475 A.2d at 798–99. A trial court is required to determine whether alimony is appropriate in light of the factors set forth in 23 Pa.S.A. § 501 (repealed by 1990, Dec. 19, P.L. 1240, No. 206, § 6, effective

1. We note that this appeal is timely because the order of August 16, 1990 was interlocutory until the Decree in divorce was entered. *See, e.g., Campbell v. Campbell,* 357 Pa.Super. 483, 516 A.2d 363 (1986).

in 90 days (23 Pa.C.S.A. § 3701)).[2] The pertinent sections of that statute are as follows:

§ 501. Alimony

(a) The court may allow alimony, as it deems reasonable, to either party, only if it finds that the party seeking alimony:

(1) lacks sufficient property, including but not limited to any property distributed pursuant to Chapter 4, to provide for his or her reasonable needs; and

(2) is unable to support himself or herself through appropriate employment.

(b) In determining whether alimony is necessary, and in determining the nature, amount, duration, and manner of payment of alimony, the court shall consider all relevant factors including:

(1) The relative earnings and earning capacities of the parties.

(2) The ages, and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties....

\* \* \* \* \* \*

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

\* \* \* \* \* \*

(8) The standard of living of the parties established during the marriage.

\* \* \* \* \* \*

(10) The relative assets and liabilities of the parties.

---

2. Neither party has raised a question concerning the possible retroactive effect of the 1990 amendments to the Divorce Code concerning alimony and equitable distribution. Thus, we cannot consider this question. *See D'Huy v. D'Huy,* 390 Pa.Super. 509, 515 n. 2, 568 A.2d 1289, 1292 n. 2 (1990); *see also Bell v. Bell,* 390 Pa.Super. 526, 530 n. 1, 568 A.2d 1297, 1299 n. 1 (1990) (en banc) (plurality opinion by BECK, J.). We note, however, that the changes in § 401 (equitable division of marital property) and § 501 (alimony) would not effect the disposition of this case.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as a homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage....

*Id.* § 501(a) and (b) (repealed by 1990, Dec. 19, P.L. 1240, No. 206, § 6, effective in 90 days (23 Pa.C.S.A. § 3701)). Similarly, in a divorce proceeding, the trial court shall, upon request of either party, equitably divide the marital property between the parties after considering all relevant factors including the following:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

23 Pa.S.A. § 401(d) (repealed by 1990, Dec. 19, P.L. 1240, No. 206, § 6, effective in 90 days (23 Pa.C.S.A. § 3502)).

Appellant contends that the trial court erred in denying alimony because it failed to consider all of the relevant factors in § 501 of the Divorce Code. Specifically, appellant argues that the trial court, in denying her alimony, failed to

account for the income appellee was receiving from his annuity with Great–West Life Assurance Company ("Great–West annuity").

The Master, in his exhaustive report, considered all relevant factors in making his recommendation regarding equitable distribution and alimony. The Master's Report indicated that, at the time of the hearing, appellant was 67 years old and appellee was 76 years old. *See* Master's Report at 19, 21. Both parties were in poor health. *Id.* The Master found that appellee was receiving income from the following sources: $1,100 per month from Social Security; an annuity with Federal Life Insurance which pays $118 per month; a quarterly income of $57 from his oil and gas investment ($19 per month); approximately $816 per month from a partnership interest in rental property; and $1,800 per month from the Great–West annuity. *Id.* at 21–22. The Master found that appellant was receiving $1,200 per month in spousal support, $413 per month from Social Security, and $900 per year from two municipal bond funds. *Id.* The Master's report also indicated that appellee had a monthly need of $3,725.63 including the spousal support. *Id.* Appellant was found to have a monthly need of $2,984.55.[3] *Id.* The Master determined that neither appellant nor appellee was employable in any respect. *Id.* at 23.

The Master recommended that appellant and appellee each receive fifty percent of the marital estate through equitable distribution. Appellee was required to pay appellant a lump sum of $159,809.73 in order to effectuate the distribution scheme. This resulted in a total value of $326,375.73 to appellee and $326,375.00 to appellant. The only marital asset that was not included in this distribution was the Great–West annuity. The Master also determined that appellant should be awarded alimony in the sum of $900 per

3. The Master noted, however, that appellant was no longer paying a car payment in the amount of $242.55 and that her housing costs had increased $33.00 per month. In addition, appellant listed on her Income and Expense Statement that she spent $3,600 per year for a health spa, but she admitted that she had not been there in three years.

month, based on a finding that appellant lacked sufficient funds to support herself and was incapable of self-support through employment. *Id.* at 29–30. The $900 per month figure was based on the fact that appellee was receiving $1,800 per month from the Great–West annuity. The Master's report explained this finding as follows:

> Additionally, Mr. Huber [appellee's expert] testified concerning the value of the Great Western [sic] Life Annuity. Mr. Huber testified that as [appellee] has already selected the option to annuitize the policy and receive monthly payments the whole value of the policy cannot now be surrendered. Mr. Huber testified that the annuity is being annuitized monthly at $1,800 and that [appellee] receives $1,800 per month. Thus, [appellee] would realize approximately $21,600 per year from the annuity. As [appellee] can no longer cash in the value of the annuity, the Master will not treat the monthly installments of the annuity as property subject to equitable distribution, but rather, will consider the monthly payments as income to [appellee] to be considered pursuant to [appellant's] request for Alimony.

Master's Report at 17–18.

Following the filing of appellee's exceptions, the trial court entered an Order denying alimony but approving the Master's report in all other respects. With regard to alimony, the trial court's Opinion stated only that "[i]f Mrs. Uhler invests her share of the marital estate she will have income in excess of $1,200.00 per month [the amount Mrs. Uhler had been receiving in spousal support] which, together with her monthly social security check, is more than enough to meet her needs. Thus, the Court sees no need to award Mrs. Uhler alimony." Trial Court Opinion, August 16, 1990, at 8.[4]

---

4. The portion of the trial court's Opinion concerning alimony focused primarily on the court's apparent disagreement with the Master's findings regarding the investment assets and income available to each party. The court, however, failed to articulate how these errors affected the Master's distribution scheme and, more importantly, why these errors led it to conclude that alimony was unwarranted here.

On the record before us, we would not hold that it was error for the trial court to deny alimony to appellant. *See, e.g., Grandovic v. Grandovic, supra,* 387 Pa.Super. at 629, 564 A.2d at 965 (citations omitted) (alimony available only where economic justice and reasonable needs of parties cannot be achieved by way of equitable distribution award and development of appropriate employable skill). Indeed, the Master stated in his report that he distributed the annuity in the form of alimony only because of the nature of that asset. However, the trial court's denial of alimony calls into question the distribution scheme as a whole.

The difficulty with the trial court's decision denying alimony is that it does not account for the value of the Great–West annuity. Appellant claims, and appellee does not contest, that the annuity was marital property. Thus, in formulating a distribution scheme and determining whether alimony was appropriate, the trial court was required to consider the annuity as income to appellee. *See* 23 Pa.S.A. §§ 401(d)(3) and (6), 501(b)(3) (repealed by 1990, Dec. 19, P.L. 1240, No. 206, § 6, effective in 90 days (23 Pa.C.S.A. §§ 3502, 3701)). The effect of the court's Order denying alimony was to award the entire value of the annuity to appellee. The Order was inconsistent in that the court purported to leave the Master's fifty-fifty distribution scheme intact, but, by denying appellant any entitlement to the value of the annuity, it altered the fifty-fifty distribution in favor of appellee. We realize, of course, that there is no presumption in favor of a fifty-fifty distribution of property between parties. *See, e.g., Morschhauser v. Morschhauser,* 357 Pa.Super. 339, 516 A.2d 10 (1986). Nevertheless, where a court purports to effect a certain distribution scheme, but then fails to properly calculate the award, it abuses its discretion. *Cf. Wayda v. Wayda,* 395 Pa.Super. 94, 104, 576 A.2d 1060, 1065 (1990). Accordingly, we must remand for the trial court to distribute the Great–West annuity in a manner consistent with this Opinion.

For the reasons set forth above, we reverse the Order below denying alimony and remand for proceedings consistent with this Opinion.

Order reversed and case remanded. Jurisdiction relinquished.