# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CT-01259-SCT

*ROBERT EDWIN BUNYARD*

*v.*

*SHEILA KAY BUNYARD*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 3/29/2000 |
| TRIAL JUDGE: | HON. SARAH P. SPRINGER |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | EARL P. JORDAN, JR. |
| ATTORNEYS FOR APPELLEE: | WILLIAM B. JACOB |
| | JOSEPH A. KIERONSKI, JR. |
| | DANIEL P. SELF, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 10/17/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

¶1. In this domestic relations case, the chancellor granted a divorce and awarded the wife an equitable interest in certain property, including real estate purchased by the husband while the couple lived together before their marriage. On the husband's appeal, the Court of Appeals affirmed, noting that the couple's premarital relationship was ratified by their later marriage. We granted certiorari and now affirm the judgments of the chancellor and the Court of Appeals but not based on the Court of Appeals' erroneous premise that the marriage ratified the couple's premarital cohabitation.

## FACTS

¶2. The Court of Appeals' opinion described the pertinent factual background:

Sheila and Robert have lived together off and on since 1983. During the years before their marriage, Sheila moved out and lived with another man for short periods of time, which the trial court deemed unsubstantial. At the beginning of the live-in relationship, Sheila worked at Peavey Electronics and Robert still works for Maples Gas Company. Both contributed to the household expenses. Sheila did the cooking, cleaning, laundry, yard work, housekeeping and gardening prior to and during their

marriage. Robert did not pay Sheila for these activities.

Sheila was diagnosed with multiple sclerosis prior to the marriage and Robert was fully aware of the diagnosis. In 1995 she applied for and received Social Security disability benefits because she was no longer able to work. She cashed in her retirement account with Peavey Electronics and used the $1,200 for household expenses. Her efforts were then devoted full time to the household.

At one point in time Sheila bought a house trailer and moved into it. Robert soon followed her. She then sold the trailer and they both moved into the home on Causeyville Road, using the proceeds from the sale of the house trailer for household expenses. This home on Causeyville Road belonged to Robert as he obtained title some ten years before in a previous divorce.

While Robert and Sheila were living together but before their marriage, Robert bought two additional parcels of property adjoining the marital home paying $19,000. Since the purchase of the additional 8.16 acres, the land has increased in value and been improved by the addition of a catfish pond, fencing and a pier. Robert submitted his income and expense statement to the court with the misleading value of $14,250 for the land which is titled solely in Robert's name.

Robert asserted that Sheila made no payments on the house or the land. He said that his father paid the balance owed to the Bank of Meridian for the land although he never offered proof of the amount paid by his father. Sheila did, however, work on the land with Robert putting up the fence, gardening, feeding the cows, and building the pier for the catfish pond. They ate the fish they caught and the vegetables Sheila grew in the garden.

*Bunyard v. Bunyard*, No. 2000-CA-01259-COA, at ¶¶ 2-6 (Miss. Ct. App. 2001).

¶3. The chancellor granted Sheila a divorce on the ground of adultery and awarded a truck and its title as lump sum alimony. Sheila was also awarded miscellaneous personal items, $3,000 in attorney's fees, $500 per month in permanent periodic alimony, and is the named beneficiary of a $100,000 life insurance policy on Robert's life. Robert was awarded the marital home and surrounding acreage. He was also given ownership of his retirement funds but ordered to pay Sheila $28,000 for her equitable interest in both his retirement and the land.

¶4. Robert appealed solely as to the award of an equitable interest in land acquired by him during the cohabitation period. He did not contest the award of alimony or attorney fees. Despite a lack of precedent, the Court of Appeals unanimously affirmed the chancellor's decision after finding that the earlier relationship was "ratified" by the parties' subsequent marriage.

## DISCUSSION

¶5. We have described our applicable standard of review as follows:

As with most matters appealed from the chancery court, this Court "employs a limited standard of review" of the division and distribution of property in divorces. *Reddell v. Reddell*, 696 So.2d 287, 288 (Miss.1997). Such division and distribution "will be upheld if it is supported by substantial credible evidence." *Carrow v. Carrow*, 642 So.2d 901, 904 (Miss.1994). This Court will not substitute its judgment for that of the chancellor "[e]ven if this Court disagree[s] with the lower court on the finding of fact and might ... [arrive] at a different conclusion." *Richardson v. Riley*, 355 So.2d

667, 668 (Miss.1978). The chancellor's findings will not be disturbed "unless the Chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." ***Bell v. Parker***, 563 So.2d 594, 596-97 (Miss.1990).

*Owen v. Owen*, 798 So.2d 394, 397-98 (Miss. 2001). Robert relies primarily on this Court's decision in ***Weeks v. Weeks****,* 654 So.2d 33 (Miss. 1995). In that case, the Court upheld a chancellor's decision not to award separate maintenance where the marriage itself was void (the wife had married her mother's brother). On appeal, the wife argued that equitable estoppel should prevent the husband from relying on the illegality of the nine year marriage. The Court affirmed the chancellor on finding that equitable estoppel was not available since both parties were relying upon a mistaken contention of law rather than a set of facts. ***Id.*** at 36. In the present case, the parties' marriage was not rendered void by their prior cohabitation and reliance on *Weeks* case is misplaced.

¶6. Robert claims that the chancellor's division of property acquired since the beginning of the parties' relationship amounts to palimony and is therefore in conflict with ***Davis v. Davis****,* 643 So.2d 931 (Miss. 1994). Robert asserts that equitable division was improper because the parties had been living in pari delicto. In ***Davis***, the parties lived together for thirteen years and were never married, although they held themselves out as husband and wife. The woman in that relationship sought an equitable division of assets but this Court held

> While the judicial branch is not without power to fashion remedies in this area, we are unwilling to extend equitable principles to the extent plaintiff would have us to do, since recovery based on principles of contracts implied in law essentially would resurrect the old common-law marriage doctrine which was specifically abolished by the Legislature.

***Id.*** at 934-35. In the present case, the parties acquired property during their cohabitation as well as their marriage. Unlike ***Davis****,* the parties here had a valid marriage at the time of their divorce thereby giving the chancellor a legal basis for the division of marital assets.

¶7. The issue here is whether real estate adjacent to the homestead can be considered a marital asset subject to division. The petition for writ of certiorari alleges that Robert received an inter vivos gift of real estate from his father whereas the appellate opinion recited that Robert paid $19,000 for the adjoining lots which were titled in his name only. Nothing in the appellate record indicated that Sheila helped to pay for the land or that she was admitted to the title. In fact, Sheila testified that Robert paid for all the land. The five acre tract was bought five years before the marriage and paid for by Robert. The 3.16 acre tract was bought almost four years before the marriage and also paid for by Robert. There was some testimony that Sheila helped to improve the land by assisting in the construction of a fence and pier.

¶8. Other jurisdictions have held that assets acquired during cohabitation prior to marriage are not subject to equitable distribution. ***Bower v. Bower****,* 611 A.2d 181 (Pa. 1992); ***Smith v. Smith****,* 749 A.2d 921, 927 (Pa. Super. Ct. 2000)(pension benefits accruing prior to second marriage to same wife not subject to division). This is in keeping with the premise that marital assets are those acquired by the parties *during* the course of the marriage. There have been exceptions where it was proven that certain property was specifically acquired in contemplation of marriage. ***Berrie v. Berrie****,* 600 A.2d 512, 518 (N.J. Super. Ct. App. Div. 1991); ***Raspa v. Raspa****,* 504 A.2d 683 (N.J. Super. Ct. Ch. Div. 1985). If property is acquired during a period of cohabitation and appreciates in value after marriage due to the parties' joint efforts and contributions, a court may equitably divide the amount of appreciation. ***Josan v. Josan****,* 521 N.Y.S.2d

270 (N.Y. App. Div.1987). As a general rule however, the existence of a marital relation does not include a prior period of cohabitation. *Cummings v. Cummings,* 376 N.W.2d 726, 730 (Minn. Ct. App.1985).

¶9. In the present case, the Court of Appeals did not find that the parties acquired the land jointly or that Sheila contributed somehow to the purchase, but instead held that the prior relationship of cohabitation was "ratified by a legal marriage in which both parties contributed to the maintenance of the homestead." The Court of Appeals was correct in its affirmance of the chancellor, but its language that the parties' cohabitation was ratified by their later marriage is unfounded in our law and unnecessary for the Court of Appeals' conclusion. The Court of Appeals seemed to believe it necessary to count the period of cohabitation and to merge the non-marital property into the marital estate because of the existence of a legal marriage. There is no authority in this State for the proposition that a subsequent marriage ratifies an otherwise illegal relationship which continues to be prohibited by Miss. Code Ann. § 97-29-1 (2000). However, we do find sufficient facts in the record which show the chancellor was correct in awarding an equitable interest in the appreciated value of the land adjoining the marital home.

¶10. "Commingled property is a combination of marital and non-marital property which loses its status as non-marital as a result." *Maslowski v. Maslowski,* 655 So.2d 18, 20 (Miss. 1995)(husband paid mortgage note after separation and claimed equitable interest in home on jointly-titled property which had been donated by in-laws and house had been built by his father-in-law with husband's funds). The burden of proof however goes beyond the mere demonstration that the asset was acquired prior to the marriage. *A&L, Inc. v. Grantham*, 747 So.2d 832, 839 (Miss. 1999). In the present case, Robert countered that the land was acquired without Sheila's financial assistance and that the property was titled in his name only. The chancellor nonetheless recognized " a period of cohabitation which involved joint efforts to accumulate assets, followed by a valid marriage where the same joint efforts continued" and found that "there can be no question that it (the unimproved real property) was accumulated by their joint efforts." Suffice it to say, that it was not inappropriate for the chancellor in exercise of her judgment to award an equitable interest to Sheila in Robert's land and retirement. While Robert purchased the land prior to the marriage to Sheila, evidence showed that Robert and Sheila treated the 8.16 acres as part of a homestead and enjoyed and used the totality of the properties as one. The chancellor considered the totality of the assets of the marital estate and placed a lien on the properties in favor of Sheila. We see no manifest error by the chancellor.

## CONCLUSION

¶11. For the reasons discussed above, we disapprove of the Court of Appeals' opinion to the extent that it holds that separate property acquired prior to a legal marriage but during a period of cohabitation is somehow ratified by the marriage and becomes a part of the marital estate. However, we find that there is sufficient evidence in the record to affirm the chancellor's award to Sheila of an equitable interest in the marital home, Robert's retirement, and the appreciated value of the adjoining land purchased by Robert prior to the marriage. Therefore, the chancellor did not err in giving Sheila an equitable interest in the properties and retirement account. The judgments of the trial court and the Court of Appeals are affirmed.

¶12. **AFFIRMED.**

> **SMITH, P.J., WALLER, COBB, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., CONCURS WITH SEPARATE WRITTEN OPINION.**

**DIAZ, JUSTICE, CONCURRING:**

¶13. I agree to affirm the judgments of the chancellor and the Court of Appeals. However, I agree with the determination made by the Court of Appeals that the relationship between Sheila and Robert was ratified by a legal marriage. Sheila and Robert lived together for about 8 to 9 years before they obtained a valid marriage. During the period of cohabitation, both parties contributed to the household expenses. Sheila cooked, cleaned, did laundry, yard work, housekeeping and gardening prior to the marriage and without compensation. During the cohabitation period, Robert purchased two parcels of property adjoining the marital home. Sheila worked on this land, helping Robert to fence the land, garden, feed the cows, and build a pier for the catfish pond. Sheila grew and cooked vegetables from the garden that flourished on the adjoining property. Sheila contributed substantially during the period of cohabitation. For these reasons, I agree with the ruling of the Court of Appeals that the relationship was ratified by a legal marriage in which both parties contributed to the maintenance of the homestead.

¶14. The facts of this case are similar to those in *Moriarty v. Stone*, 668 N.E.2d 1338 (Mass. App. Ct. 1996). In *Moriarty*, significant contributions were made during the premarital partnership during a ten-year period in which the parties lived together prior to marriage. *Id.* at 1344. That court found that, given the appropriate circumstances, the parties' contributions during cohabitation, and prior to a valid marriage, may be considered when fashioning the remedy of equitable distribution.

¶15. The rule set forth by the Mississippi Court of Appeals simply prevents one spouse from using the law to his or her advantage in depriving the other spouse of significant contributions made during cohabitation prior to marriage. The subsequent marriage only ratifies the cohabitation to the extent that those contributions to the maintenance of the relationship, made during the period of cohabitation, should be considered marital property for purposes of equitable distribution. This ruling has no effect on *Davis v. Davis*, 643 So. 2d 931 (Miss. 1994) in which "palimony" was frowned upon in a case involving no valid marriage.

¶16. For these reasons, I agree to affirm the judgment of the Court of Appeals and the chancellor's equitable division of the marital assets.