J-S10017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ERIC TILL AND TILL COMMUNICATIONS, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| VIP WIRELESS, INC., JACK HUSTON A/K/A JOHN CARANFA AND EDWARD WILLIAMS | |
| Appellees | No. 1259 EDA 2014 |

Appeal from the Order Entered March 5, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 03884 March 2012

BEFORE:  GANTMAN, P.J., STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 14, 2015**

Appellants, Eric Till and Till Communications, Inc. (collectively, "Till"), appeal from the trial court's March 5, 2015 order granting the summary judgment motion of Appellees, VIP Wireless, Jack Huston a/k/a John Caranfa and Edward Williams.  The March 5, 2015 order rendered final an order of September 24 2012 sustaining Appellees' preliminary objections to several causes of action set forth in Appellants' second amended complaint.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

Till operates retail stores selling cell phones and cellular service plans. VIP Wireless ("VIP") sells Sprint cell phones and cellular service plans, and it contracts with entities such as Till to operate retail outlets for that purpose. In October of 2005, Till and VIP entered a five-year contract whereby Till would operate a retail outlet selling VIP's cell phones and service plans. The resulting retail outlet was located at 250 East Street Road, Feasterville, Pennsylvania. In 2008, Sprint and VIP entered an "Authorized Representative Agreement" which essentially continued the practice of VIP offering Sprint phones and services through third-party retailers such as Till. Also in 2008, Till entered a "Subcontractor Consent Agreement" with Sprint. Till operated the Feasterville retail outlet under the trademarks and insignia of Sprint.

One of Till's responsibilities was to perform warranty work by repairing or replacing defective phones when necessary. Upon completion of such work, Till sent a voucher to Sprint requesting reimbursement. Upon receipt of a warranty voucher Sprint paid VIP and VIP in turn reimbursed Till. On January 15, 2009, a Sprint employee sent an email to Appellee Jack Huston ("Huston") expressing concerns about Till's warranty vouchers. The text of that email reads as follows:

VIP Wireless (Feasterville) was selected from the YTD Payment Report to have outbound calls made to customers. This ASC issued 160 vouchers from 12/30/08 and 12/31/08 for a total of $4,146.79. All 160 customers from these vouchers were called. Sixteen (16) vouchers were Compliant, 40 were Non-Compliant, and 104 were No Contact. Of the contacts made,

- 2 -

71% were Non-Compliant. The contacted vouchers totaled $1,134.57 with the Non-Compliant vouchers comprising 84% of this total. Please see the attached spreadsheet for details of the outbound calls with the Non-Compliant vouchers **bolded**.

These 40 vouchers total $1,134.57 and will be debited 1/29/09. If there is any additional information regarding these Non-Compliant vouchers, please provide it to me prior to 1/29/09.

Thank you.

Second Amended Complaint, 7/9/12, at ¶ 15 (emphasis in original).

An alternate version of the January 15, 2009 email is identical except that it includes one additional sentence at the end of the first paragraph: "We have contacted the customers again with the same result and feel that this has been deemed as fraud." *Id.* at ¶ 16. The origin of this additional sentence is the heart of the instant dispute. Appellees claim Sprint sent VIP both versions of the email, and that Sprint deemed Till's conduct fraudulent. Till alleges VIP altered Sprint's original email to include the express allegation of fraudulent conduct. All of Till's causes of action arise from its allegation that VIP altered Sprint's email to include an express accusation of fraud.[1]

---

[1] As to the accuracy of the information in Sprint's original email, Till alleges as follows:

The accuracy of the purported findings set forth in [Sprint's January 15, 2009 email] is not known to the Plaintiffs and accordingly, Plaintiffs do not accept the statements made as being true.

*(Footnote Continued Next Page)*

On March 2, 2009, VIP's counsel sent Till a letter immediately terminating the October 2005 agreement. The October 2005 agreement permitted immediate termination in the event of fraud. In the March 2, 2009 letter, VIP's counsel quoted Sprint's January 15, 2009 email verbatim, and noted "VIP has been advised, by Sprint, that 'We have contacted the customers again with the same result and feel that this has been deemed as fraud.'" *Id.* at ¶ 19.

Till commenced this action on March 29, 2012. Appellees filed preliminary objections on May 11, 2012, and Till filed an amended complaint on June 11, 2012. Appellees filed preliminary objections to the amended complaint on June 20, 2012, and Till filed its second amended complaint on July 9, 2012. Appellees once again filed preliminary objections. On September 24, 2012, the trial court sustained Appellees' preliminary objections (demurrer)[2] as to Till's causes of action for defamation, negligent misrepresentation, intentional misrepresentation, civil conspiracy and civil aiding and abetting. The trial court also sustained Huston's and Appellee Edward Williams' ("Williams") preliminary objections to Till's breach of contract complaint.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

Second Amended Complaint, 7/9/12, at ¶ 18. Till maintains in its brief that this email did not accuse Till of fraudulent or illegal activity. Till's Brief at 30.

[2] Pa.R.C.P. 1028(a)(4).

- 4 -

On October 25, 2012 Appellees answered the remaining causes of action set forth in the Second Amended Complaint (breach of contract against VIP and intentional interference with contractual relations against all Appellees.)  On November 1, 2013, Appellees filed a motion for summary judgment.  The trial court granted that motion on March 4, 2014.  Till filed a timely notice of appeal on April 1, 2014.  Till raises seven assertions of error, five of which correspond to the five causes of action dismissed at the preliminary objection stage and two of which correspond to the two causes of action on which the trial court entered summary judgment in favor of Appellees.  We will begin with an analysis of the trial court's entry of summary judgment on Till's claim for intentional interference with contractual relations.

Rule 1035.2 of the Pennsylvania Rules of Civil Procedure permits entry of summary judgment when the pleadings are closed and the record evinces "no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report[.]"  Pa.R.C.P. 1035.2.  We review an order granting a summary judgment motion as follows:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.  Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.  Our scope of review of the trial court's order granting or denying summary judgment is plenary, and our standard of review is clear:  the

trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

***Young v. Prizm Asset Mgmt. Co.***, 100 A.3d 594, 596 (Pa. Super. 2014).

Till asserts Appellees intentionally interfered with their present and prospective contractual relations by altering Sprint's January 15, 2009 email to include an allegation of fraud. Appellees relied on the statute of limitations as a defense to Till's intentional interference with contractual relations claim. The parties agree that this tort claim is subject to the two-year statute of limitations set forth in § 5524(7) of the judicial code. 42 Pa.C.S.A. § 5524(7).

> Generally, a statute of limitations period begins to run when a cause of action accrues; *i.e.*, when an injury is inflicted and the corresponding right to institute a suit for damages arises. It is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform him- or herself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period. Generally, once the prescribed statutory period has expired, the complaining party is barred from bringing suit. However, the discovery rule acts as an exception to this principle, and provides that where the complaining party is reasonably unaware that his or her injury has been caused by another party's conduct, the discovery rule suspends, or tolls, the running of the statute of limitations.

***Gleason v. Borough of Moosic***, 15 A.3d 479, 484 (Pa. 2011) (citations omitted). "[T]here are few facts which diligence cannot discover, **but there must be some reason to awaken inquiry** and direct diligence in the channel in which it would be successful. ***Crouse v. Cyclops Indus.***, 745 A.2d 606, 611 (Pa. 2000) (emphasis added).

As explained above, Till commenced this action March 29, 2012. Till learned of the allegation of fraud no later than March 2, 2009, when VIP's counsel sent the termination letter to Till. Till alleges, however, that it first learned VIP altered Sprint's January 15, 2009 email within one year of the filing of this litigation. Second Amended Complaint, 7/9/12, at ¶ 17. Till allegedly learned this information via "a communication from Sprint's representative." *Id.* Till therefore argues it was unaware the accusation of fraud came from VIP and could not, through the exercise of diligence, have discovered that fact until sometime after March 29, 2011.

In granting Appellees' summary judgment motion, the trial court relied on allegations in Till's federal lawsuit against Sprint, which Till filed in the Eastern District of Pennsylvania on April 28, 2009.[3] In the federal complaint complaint, Till alleged:

> 19. On or about January 15, 2009, at 1:00 p.m., [Sprint's] employee and or agent, one Penny S. Barnett, sent an email to David Gryzbowksi,[4] with copies to Theresa Moran and Linda Lewis. Said email referred to "Subject: Outbound Customer Calls – VIP Wireless (Feasterville) 2237".[Paragraph 19 of the federal complaint goes on to quote the text of the January 15, 2009 email, which we have already done.]

_____

[3] The federal complaint was docketed at No. 09-CV-175. Appellees attached a copy of the federal complaint as Exhibit B to their October 25, 2012 Answer and New Matter.

[4] This name is inconsistent with Till's second amended complaint, which alleges that Huston was the recipient of Sprint's January 15, 2009 email. Second Amended Complaint, 7/9/12, at ¶ 15.

20. In the alternative to paragraph 19 of the Complaint, on or about January 15, 2009 at 1:00 p.m., [Sprint's] employee and/or agent, one Penny S. Barnett, sent an email to Dave Gryzbowski, with copies to Thresa Moran and Linda Lewis. Said email referred to "Subject: Outbound Customer Calls – VIP Wireless (Feasterville) 2237". [Paragraph 20 of the federal complaint goes on to quote the altered version of the email, with the additional sentence at the end of the first paragraph concluding the vouchers were fraudulent.]

21. It is not known by the plaintiffs whether the email text as set forth in paragraph 19 was authentic or whether the email text as set forth in paragraph 20 was authentic. Accordingly, plaintiff will proceed on alternative assumptions. The first assumption is that the e-mail[5] texts in paragraphs 19 and 20 were both authentic. The alternative assumption is that the text in paragraph 20 was not authentic, but altered to include the italicized language[6] set forth herein.

22. With respect to the aforesaid email(s), said email(s) were prepared, upon information and belief, by Sprint employees and designed to be ultimately distributed, inter alia, to VIP personnel.

23. Upon information and belief, the email set forth in paragraph 19 was disseminated by [Sprint's] employees and/or agents of VIP. **VIP then, through its agents and/or employees, altered the email to include the italicized language** set forth in paragraph 20 without the express permission or knowledge of [Sprint's] employees. In taking such action, VIP and its agents and employees were acting, not only on their own behalf, but also as the agents and/or ostensible agents of the instant defendants.

---

[5] The federal complaint uses hyphenated and unhyphenated spellings of email.

[6] The italicized language is the additional sentence deeming Till's conduct fraudulent.

Till's Federal Complaint, 4/28/09, at ¶¶ 19-23 (emphasis added).[7] Based on the bolded portion of the foregoing, the trial court rejected Till's discovery rule argument and concluded that the instant action, filed nearly three years after the federal complaint against Sprint, is barred by the statute of limitations. We agree.

VIP terminated its contract with Till on March 2, 2009. The March 2, 2009 termination letter included the sentence accusing Till of submitting fraudulent vouchers. Less than two months later, Till filed a federal lawsuit against Sprint alleging, albeit in the alternative, that VIP altered Sprint's email to include an allegation of fraud. These circumstances do not warrant application of the discovery rule. As noted above, the discovery rule tolls the statute of limitations where a party is "reasonably unaware that his or her injury has been caused by another party's conduct[.]" **Gleason**, 15 A.3d at 484. The federal complaint evinces Till's awareness of the possibility that VIP caused its alleged injuries. Rule 11 of the Federal Rules of Civil Procedure mandates that factual contentions in federal complaints have "evidentiary support, or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" F.R.C.P. 11(b)(3). Thus, as of April 28, 2009, Till believed,

---

[7] The federal district court ultimately dismissed the complaint for lack of subject matter jurisdiction, concluding Till was bound by an arbitration agreement.

at a minimum, that it would likely have evidentiary support for its allegation that VIP altered Sprint's email. Till expressly alleged on "information and belief" that VIP personnel altered Sprint's email to include the allegation of fraud. Till's Federal Complaint, 4/28/09, at ¶ 23. Under these circumstances, Till cannot claim it was "reasonably unaware" of VIP's alleged conduct as of the filing of its federal complaint, or that there was nothing to "awaken inquiry" as to potential causes of action under the standard set forth in **Gleason** and **Crouse**. At the very least, Till could have filed a writ of summons and sought pre-complaint discovery. Pa.R.C.P. 1007(1); 4001(c); 4007.1(c); **See McNeil v. Jordan**, 894 A.2d 1260, 1268-69 (Pa. 2006).[8]

Till nonetheless argues that summary judgment was inappropriate because, where the discovery rule is at issue, the date of commencement of the statute of limitations should be left to the fact finder. Till's statement of the law is correct, but it does not warrant relief here. "[O]nce the running of the statute of limitations is properly tolled, only where the facts are so clear that reasonable minds *cannot differ* may the commencement of the limitations period be determined as a matter of law." **Crouse**, 745 A.2d at 611 (emphasis in original). Till misunderstands the trial court's holding. The trial court declined to toll the statute, holding that Till was aware of its

---

[8] We express no opinion on whether and to what extent Till could have obtained pre-complaint discovery.

injury on March 2, 2009 when Till received the termination letter from VIP. Trial Court Opinion, 9/3/14, at 3. We agree with the trial court that Till was aware of its injury as of March 2, 2009, and that its obligation to conduct a diligent investigation and file a timely action commenced as of that date. Till's allegations in the federal complaint, filed less than two months later, strongly support the trial court's conclusion. Since the trial court did not toll the statute of limitations, it did not need to discern a date on which Till reasonably should have discovered its alleged injury. Based on all of the foregoing, we conclude the trial court did not commit an error of law or abuse of discretion in entering summary judgment on this cause of action.

Next, we consider the five causes of action dismissed at the preliminary objection stage. All five – defamation, intentional misrepresentation, negligent misrepresentation, civil conspiracy and civil aiding and abetting – sound in tort. All five arise out of VIP's alleged alteration of Sprint's email. In the defamation action, Till alleges VIP's alteration of Sprint's email is the defamatory statement. Second Amended Complaint, 7/9/12, at ¶ 16. The allegedly altered email is the misrepresentation at issue in Till's intentional and negligent misrepresentation claims.[9] Similarly, Till alleges the altered email was the

_____

[9] In negligent and intentional misrepresentation causes of action, the representation is actionable where it induces another to act on it. **Porreco v. Porreco**, 811 A.2d 566, 570-71 (Pa. 2002); **Bortz v. Noon,** 729 A.2d

*(Footnote Continued Next Page)*

subject of a civil conspiracy and or civil aiding and abetting among VIP, Huston, and Williams.[10]

Defamation is subject to a one-year statute of limitation. 42 Pa.C.S.A. § 5523(1). The remainder are subject to the two-year limitation of § 5524(7). For reasons we have explained above, none of these causes of action can survive the statute of limitations. We are cognizant that a statute of limitations defense must be pleaded as new matter per Pa.R.C.P. 1030 and the trial court could not have relied on the statute to sustain preliminary objections. Nonetheless, this Court can affirm a trial court on any valid basis, so long as the result is correct. *Wilson v. Transp. Ins. Co.*, 889 A.2d 563, 576 n.4 (Pa. Super. 2005). We conclude that dismissal of all of Till's tort-based causes of action is the correct result, inasmuch as all of them were time-barred as of the commencement of this action.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

555, 561 (Pa. 1991). We are at a loss to understand how either cause of action applies to these facts. Appellees' alleged misrepresentation induced no action on the part of Till. Till cannot sue Appellees for relying on their own intentional/negligent misrepresentation to terminate Till's contract.

[10] These causes of action also do not fit the facts. A civil conspiracy exists where "two or more person agree to commit an unlawful act or to do an otherwise lawful act by unlawful means." *Skipworth v. Lead Indus. Ass'n*, 690 A.2d 169, 174 (Pa. 1997). Till does not allege any individual actions on the part of Huston or Williams, nor does Till provide authority for the proposition that a company can conspire with its own employees to terminate unlawfully the company's contract with a third party. Till also does not explain who among the Appellees aided the tortious conduct of the others, as would be necessary to sustain a cause of action for civil aiding and abetting. *See Hranec Sheet Metal, Inc. v. Metallico Pittsburgh, Inc.*, 107 A.3d 114, 120 (Pa. Super. 2014).

The final issue on appeal is whether the trial court erred granting VIP's motion for summary judgment on Till's breach of contract claim.[11] Till's brief cites no law in support of this argument, and we could deem it waived for that reason alone. Pa.R.A.P. 2119(b); *Dalrymple v. Kilishek*, 920 A.2d 1275, 1281 (Pa. Super. 2007). Regardless of Till's deficient brief, we are able to discern that this argument fails on the merits.

A cause of action for breach of contract exists where the plaintiff can plead and prove (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages. *Corestates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999). The contract between Till and VIP and its essential terms are not in dispute. The contract permitted VIP to terminate the contract immediately in the event of fraudulent conduct by Till. Till does not dispute that submission of fraudulent reimbursement vouchers would justify termination.

VIP based its summary judgment motion on evidence supporting its contention that the email containing the accusation of fraud came from Sprint. In opposing VIP's motion, however, Till relied solely on its own pleadings:

> Not only do the Plaintiffs state and have always contended that they never committed fraud but that the Plaintiffs in

---

[11] As noted above, the trial court sustained Huston's and Williams' preliminary objections to the breach of contract claim. Till has not challenged that ruling on appeal.

addition have consistently alleged that the Defendants altered the original Sprint email so as to add, *inter alia*, the language 'We have contacted the customers again with the same result and feel that this has been deemed as fraud.' **See paragraphs 15 through 19 of the Second Amended Complaint**"

Till's Response to VIP's Motion for Summary Judgment, 12/4/13, at ¶ 21 (emphasis added). Till's Response repeatedly quotes from or refers to the second amended complaint to establish the existence of a disputed issue of material fact. *Id.* at ¶¶ 23, 24, 26, 31.

Well-settled law establishes the inadequacy of Till's response to VIP's summary judgment motion:

> Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof…establishes the entitlement of the moving party to judgment as a matter of law.

*Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001). Since Till bore the burden of proving its breach of contract claim, and since it adduced no evidence in support of that cause of action other than the allegations in its complaint, the trial court properly entered summary judgment.

Since we have concluded that all of Till's causes of action were properly dismissed, we affirm the trial court's order.

Order affirmed.

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/14/2015