J-A06032-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| EDWARD HIGGINS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KELLY T. HIGGINS | : | No. 1884 EDA 2019 |

Appeal from the Order Entered June 5, 2019
In the Court of Common Pleas of Bucks County Family Division at No(s):
A06-15-61890

BEFORE:   STABILE, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          March 25, 2020

Edward Higgins (hereinafter "Appellant") appeals from the Order entered in the Court of Common Pleas of Bucks County on June 5, 2019, which ordered and decreed that Appellant and Kelly T. Higgins (hereinafter "Appellee") are divorced from the bonds of matrimony and that the terms, provisions, and conditions of the trial court's order announced in open court on May 28, 2019,[1] and reduced to writing on June 5, 2019, are incorporated therein.   We affirm.

The trial court set forth the history of this case as follows:

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

_____

[*] Former Justice specially assigned to the Superior Court.
[1] The June 5, 2019, Order erroneously refers to the date the May 28, 2019, Order had been announced in open court as May 29, 2019.

The parties married on September 24, 1999 in Media, Delaware County, Pennsylvania. The parties purchased the marital home located at 2237 Sunrise Way, Jamison, PA 18929 on December 15, 1999. Appellant separated from Appellee on September 23, 2015 while Appellee has remained at the residence. Following separation. Appellant began residing with his mother at 15042 Endicott Street, Philadelphia, PA 19116.

Appellant filed a Complaint in Divorce on October 14, 2015 against Appellee on the grounds that the marriage was irretrievably broken under § 3301(c). Appellee filed an Answer and Counterclaim on December 21, 2015. An Interim Property Settlement Agreement was entered into on December 22, 2016 without prejudice to either party's arguments reserved for equitable distribution. The Interim Property Settlement Agreement became an Order of Court by the Honorable Judge James M. McMaster of the Bucks County Court of Common Pleas effective January 28, 2016. Affidavits of Consent under § 3301(c) of the Divorce Code were submitted by Appellant on February 10, 2016 and Appellee on February 12, 2016.

A contempt hearing was held on April 19, 2016 in regards to Appellant's failure to obey Judge McMaster's January 28th Order. Said January 28 Order required Appellant to withdraw sufficient funds from a retirement account to bring the mortgage on the marital residence current. Interestingly in this Contempt proceeding, Appellant clearly lied and ultimately admitted to perjuring himself when he deliberately sought to mislead this [c]ourt as to how much money he had actually withdrawn (footnote see below). The [c]ourt then found the Appellant to be in Contempt of Court and he was Ordered to serve a 90-day Sentence of Incarceration as a sanction. However, the [c]ourt deferred execution of the Sentence until April 29, 2016, to afford the Appellant the opportunity to purge himself of Contempt by paying the "missing" $34,000 into the account used to allow for a possible resolution to the mortgage deficiency issues within 10 days. (Appellant subsequently paid the $34,000 and purged himself of Contempt and was relieved of the obligation to serve the Sentence of incarceration.) Appellee's Petition for Special Relief was granted in the same Order of April 19, 2016, which decreed that Appellee would receive full Power of Attorney with the ability to sell the marital residence, and that Appellant was to pay $1,500.00 in counsel fees (at the time of equitable distribution). Appellee also received exclusive possession of the marital residence[1].

Appellant filed a Notice of Intention to Request Entry of a Grounds Order on June 29, 2016. Judge McMaster approved the grounds for divorce on July 22, 2016 as Irretrievable Breakdown under § 3301 (c), and he also determined that the action was ready for resolution of all pending claims. The matter was referred to the Family Master's Office.

Appellant filed an Inventory and Appraisement on March 31, 2017. Appellee requested the production of documents on April 14, 2017, but filed a Motion for a Master's Hearing after Appellant had failed to produce documents as of August 25, 2017. Appellee filed for sanctions on September 8, 2017. Appellant submitted a Memorandum in Support of Equitable Distribution on January 24, 2018. Appellee filed an Inventory and Appraisement Form on March 16, 2018. Family Court Master Matthew B. Garry's Report was filed on April 4, 2018. Appellee filed her Motion for De Novo Hearing on May 4, 2018 addressing the issues of Equitable Distribution, Alimony, and Counsel Fees and Costs before Judge McGuffin.

A De Novo hearing was scheduled for November 15, 2018. In anticipation of De Novo Hearings, this Trial Court, like many, has a procedure in which it directs Counsel for each party to prepare a Stipulation to confirm Agreement via a list to as many agreed upon factual issues as possible, and then further to itemize a list of the matters that are in dispute. It is not uncommon for the parties to use the content of the Master's report as a frame of reference in listing these items, and the parties frequently comment on the Master's report in preparation for the De Novo Hearing. However, this [c]ourt is well aware that while the Master's report may be helpful in the way of organizing factual information, if an actual hearing is necessary, the [c]ourt will conduct its own findings of fact (which can be done by Stipulation) and its own analysis of the law.

In this case, as in many, the parties did reach an agreement by Stipulation on many of the issues. Interestingly, Appellant who now suggests indirectly that the [c]ourt improperly relied on the Master's hearing and recommendations indicated in his filings that he was in Agreement with the Master's report and recommendations and sought to have them entered as an Order of Court. Appellant's prepared and filed "Stipulation of Agreed Upon Facts", and his prepared and filed itemization of the "Facts of Plaintiff Not Agreed Upon", are attached to this Opinion as Exhibit "B" and "C" respectively. Said documents will also be docketed as part of the official record of this matter. In his "Facts

of Plaintiff Not Agreed Upon," Appellant stated that he "did not object to the recommendation of the Master." Exh. C at ¶ 1.

On November 15, 2018, at the commencement of the De Novo Hearing, both counsel requested a Settlement Conference. Much of the morning of that hearing was spent in Conference and ultimately the [c]ourt was informed that the parties had reached an Agreement and that no testimony would be needed. When the parties returned to the courtroom to put the Agreement on the record, Appellee requested more time to think about the Agreement. Appellant did not indicate that he needed to think about the Agreement. In fact, it was the [c]ourt's distinct understanding that Appellant wanted the Agreement finalized that day. There was a discussion by the parties to finalize the Agreement which had been reached over the next few weeks. Appellant subsequently filed his Motion for a De Novo Hearing on December 20, 2018 and then requested that the hearing be relisted, purportedly to have the Agreement entered as an Order of Court. The second hearing was scheduled for May 28, 2019.

At the hearing on May 28, 2019, the [c]ourt once again obliged the request to conduct a Settlement Conference. In the Conference and in the discussions on the record, the Master's report was referenced, as was the Agreement that had been discussed and negotiated at the initial date of November 15, 2018. The [c]ourt was asked by [c]ounsel to address alterations in the six months that had elapsed since the November 15, 2018 negotiated Agreement. In particular, the deficiency judgment and unreimbursed medical expenses from 2017 and 2018 were addressed, and the [c]ourt entered its Order on the record. The [c]ourt then issued a Decree in Divorce on June 5, 2019 which included the terms discussed at the May 28, 2019 hearing. . . .

_____

[1] Appellant misled this [c]ourt with regard to two false scenarios. First, that he was only able or permitted to withdraw $30,000.00 by the Retirement financial institution. Secondly, that he had in fact only withdrawn $30,000.00 when in fact he had withdrawn $64,000.00. Appellant was given an opportunity to speak truthfully before a brief recess was taken so he could acquire his bank statements to prove the amount that was actually withdrawn. Following the recess, Appellant conceded that he had in fact withdrawn $64,000 and had lied to the [c]ourt. The Transcript of this exchange had not been requested or prepared previously, but is now attached to this Opinion as Exhibit "A" and will also be docketed as part of the official record.

- 4 -

Trial Court Opinion, filed 10/1/19, at 1-5.

Appellant filed the instant timely appeal pursuant to Pa.R.A.P. 1925(b) on July 1, 2019, and the trial court directed him to file a concise statement of matters complained of on appeal in its Order entered on July 15, 2019. Appellant later filed his Concise Statement of Errors Complained of on Appeal on July 18, 2019, wherein he presented fourteen (14) issues for the trial court's review. The trial court filed its Opinion pursuant to Pa.R.A.P. 1925(a) on October 1, 2019.[2]

In his brief, Appellant presents the following Statement of Questions Involved:

> I.    Did the Trial Court err and abuse its discretion by referring to and relying upon terms that the parties did not agree to in its final order?
>
> II.    Did the Trial Court err, abuse its discretion, and violate Appellant's procedural due process rights by failing to hold a *de novo* hearing after Appellant asked for one and then stated that he was not in agreement with the terms of the Trial Court's final order?
>
> III.    Did the Trial Court abuse its discretion and err by issuing a final order that: (1) failed to consider or discuss the relevant factors for alimony and equitable distribution, specifically the factors enumerated in the Pennsylvania Divorce Code; and (2) omitted the reasons/rationale for its terms, as required by the Pennsylvania Divorce Code?

---

[2] Wife failed to file an appellate brief in this matter. As a result, she was precluded from presenting oral argument.

IV. Did the Trial Court exhibit bias so as to warrant recusal of the Honorable Brian T. McGuffin upon a remand of the case?

Brief for Appellant at 7.

As Appellant's first two issues are interrelated, we will discuss them together; however, prior to doing so, we must consider whether he has waived his right to present these challenges. *See Commonwealth v. Wholaver*, 588 Pa. 218, 903 A.2d 1178 (2006) (holding this Court may *sua sponte* determine whether issues have been properly preserved for appeal).

This Court recently considered a party's argument that he had been prevented from presenting expert testimony at a hearing. Finding the record nowhere revealed that counsel had raised such an objection or otherwise argued that Appellant's due process rights were being violated, we found his claims to be waived on appeal. *Consol. Eagle, Ltd. v. BL GP, LLC*, 2019 WL 6330587, at *8 (Pa.Super. Nov. 26, 2019) (unpublished memorandum) (citing Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court); *Fillmore v. Hill*, 665 A.2d 514, 515-16 (Pa.Super. 1995) (stating, "[I]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error ... will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.") (citations omitted). Moreover, when

- 6 -

a trial court directs an appellant to file a concise statement of matters to be raised on appeal pursuant to Pa.R.A.P. 1925(b), any issues not raised therein are waived. **See Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998).

Appellant maintains that the parties did not reach an agreement at the November 15, 2018, hearing as the trial court states, because they did not have a "meeting of the minds" with regard to equitable distribution, and neither Appellant nor his counsel mutually assented to any of the settlement terms purported by the trial court. Appellant reasons the fact an agreement had not been reached is evident in that the trial court acknowledged Appellee had asked for additional time in which to think the matter over. Brief for Appellant at 19-24.

Appellant further contends the trial court entered its final order over his repeated objections at the May 28, 2019, hearing, making it clear that he "no longer agreed to anything" at that time, as is evidenced by the fact that the trial court recognized he was "frustrated" with its proposed resolution of the matter. Appellant posits that even if he did not make a proper objection at the May 28, 2019, proceeding, such error is excused due to "procedural irregularity" and "judicial impropriety" in light of the trial court's failure to collect evidence or testimony to confirm the existence of an agreement or to clarify what the terms of that agreement might be. Appellant reasons the May 28, 2019, "event" did not conform to the manner in which a *de novo* hearing should proceed, and any attempt by Appellant to object to the irregularity

- 7 -

would have been futile. For the same reason, Appellant contends any failure to raise an issue in his concise statement filed pursuant to Pa.R.A.P. 1925(b) is also excusable. Appellant concludes that his request for a *de novo* hearing was required but ignored by the trial court who entered the order with no evidentiary basis and in doing so denied him his procedural due process rights. Brief for Appellant at 24-50.

The trial court issued the Decree in Divorce on June 5, 2019, which included the terms discussed at the May 28, 2019, hearing. The court stressed that Appellant at no time during the May 28, 2019, hearing or during the earlier November 15, 2018, proceeding objected to the court's process or otherwise expressed reservation as to its disposition of the matter. Trial Court Opinion, filed 10/1/19, at 8. Following our review, we find record support for the trial court's observations.

Assuming, *arguendo*, there had been no meeting of the minds between Appellant and Appellee in November of 2018, the record reveals Appellant assented to the terms the trial court articulated at the May 28, 2019, hearing, despite his allegations to the contrary herein. The trial court made numerous references to the November 15, 2018, conference, at the May 28, 2019 hearing. Initially, the trial court reminded the parties that they:

> had spent a fair amount of time on the case on November 15 of 2018 and had gotten to the point where we essentially had an agreement as to we were going to take the Master's recommendation and tweak it for purposes of resolving the case. We had an agreement in place. Ms. Little Simcox asked on behalf of [Appellee] for some additional time for her client to, I would

just say, sort of think it though and to make certain that she was entering the agreement knowingly and such.

And so here we are back really, in my view, to confirm that agreement because the world doesn't stop from November 15 [ ] 2018 until today's date May of '19. We have to address how do we fairly deal with that agreement that was reached, for all practical purposes, in November of 2018 but was not put on the record because [Appellee] needed some time to collect her thoughts and make sure she was comfortable with the agreement.

So now we have to address what's happened in the last six months. And so I have a plan to do that and I've discussed that plan with counsel….

N.T., 5/28/19, at 2-3.

Neither Appellant nor his counsel objected in response to this introduction. Instead, following a brief statement from Appellee's counsel, counsel for Appellant clarified that Appellant "has had time to reflect" and that "he is not in agreement he should be responsible for the full amount of the deficiency judgment [and] it's his position that the $1200 a month and the longer period of time for another additional, I think its 19 months, is burdensome to him. **Those are his issues**." *Id*. at 4-5 (emphasis added).

After discussing its familiarity with the case and the past acrimony between the parties, the trial court indicated the matter before it had been listed as a "status conference" the reason for which was to "tweak" the parties' prior agreement and put it on the record. The court stated "[Appellant] was in agreement with this matter November 15 of 2018. I intend to enforce that agreement." *Id*. at 6. Appellant did not disagree with the trial court's characterization of the purpose of the May 28, 2019, hearing or of Appellant's position pertaining to matters apparently decided on November 15, 2018.

At this juncture, the trial court explained that it was aware the proceeding was *de novo* and it would be using the Master's Report as a starting point and incorporating certain changes when entering its final order. The trial court proceeded to dispose of the outstanding equitable distribution issues, including alimony, and in doing so referenced several times the parties' prior agreement. *Id*. at 6-10. Appellant did not object.

Appellee's counsel reminded the trial court that Appellant's pension had not been addressed. The trial court discussed that matter along with loan payments owed to members of Appellee's family, which it assigned to Appellee. The court also considered liability for a deficiency judgment, if the bank were ever successful in collecting the money owed on it, that Appellant had questioned at the outset of the proceeding. *Id*. at 10-11. The trial court explained it was assigning that obligation to Appellant as he was the party in the best position to pay and upon consideration of his "obstinance and recalcitrance" as part of his prior misleading the court about the amount of money he had withdrawn from a retirement account. *Id*. at 12.

Although Appellant's counsel requested further clarification pertaining to the division of the pension, and received the same from the trial court, the court asked the parties if there were anything further, to which counsel for Appellant responded, "No, Your Honor." *Id*. at 15. When further prompted as to whether it "cover[ed] all of the issues on the record that were out there that were outstanding from November," no objection followed; instead,

Appellant's counsel asked for clarification pertaining to the arrears provision added to the $1200 a month payment and thanked the trial court after receiving further explanation.

The final exchange between the trial court and the parties' counsel is as follows:

> **THE COURT:** All right. And I also wanted to say that Ms. McGovern raised the issue about the 2018 medical not having been presented. I wanted to just preserve that for the record. And I agree with that but, again, it all came down to the idea today is take the November agreement that we had in place, that everybody had agreed to, [Appellee] just needed a little bit more time to collect her thoughts, and entered that agreement on the record and make the adjustments that were necessary to effectuate the terms of that agreement. That's what I did today.
>
> **MS. MCGOVERN**: Yes, Your Honor. Thank you. That is true that it's our position that in accordance with the statute that the medical bills for 2018 would have had been submitted to us, to my client and/or to me, March 31st of 2019, and we never received them.
>
> **THE COURT:** Right.
>
> **MS. LITTLE SIMCOX:** Your Honor, but again--
>
> **THE COURT:** I heard. I know. I get —
>
> I used my equitable power to determine that he wasn't going pay the entire 600 some dollars. I used my equitable power to determine he was going to pay 406, and I have the ability to do that.
>
> I know there's been some things that happened in your life, in your wife's family, her father passing and such; and I also know that it was the one little thing that we hadn't gotten finished in November of '18 that we would have. So we fixed it today.
>
> All right, folks. Thanks [sic] you very much. I wish you good luck.
>
> **MS. MCGOVERN**: Thank you, Your Honor. May I be excused?
>
> **THE COURT**: Yes.

*Id*. at 18-20.

Despite multiple invitations from the trial court to raise additional concerns or to seek further clarification, Appellant at no time expressed a desire to present evidence or testimony, nor did he otherwise take issue with the procedure by which the trial court made its final equitable distribution or claim he felt he had been denied due process. To the contrary, Appellant clearly acquiesced in the terms the trial court set forth. In light of the foregoing, Appellant has waived his first two claims raised on appeal.

Appellant next avers the trial court failed to consider and discuss the applicable factors for alimony and equitable distribution as set forth in 23 Pa.C.S.A. § 3502(a),[3] and its attempt to do so in its Pa.R.A.P. 1925(a) Opinion

_____

[3] Pursuant to the Divorce Code, the following factors are relevant to the equitable division of marital property:

(1) The length of the marriage.
(2) Any prior marriage of either party.
(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.
(4) The contribution by one party to the education, training or increased earning power of the other party.
(5) The opportunity of each party for future acquisitions of capital assets and income.
(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.
(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.
(8) The value of the property set apart to each party.
(9) The standard of living of the parties established during the marriage.

constitutes a "tardy maneuver" which fails to cure its prior error. Brief for Appellant at 55-56. Once again, we first determine whether this issue has been preserved for appellate review. **Wholaver**, **supra**.

Where a Rule 1925(b) Statement does not sufficiently identify the issues raised on appeal, this Court has found waiver of all issues on appeal and explained as follows:

> In **Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306 (1999), the Pennsylvania Supreme Court specifically held that "from this date forward, in order to preserve their claims for appellate review, Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to [Pa.R.A.P.] 1925." **Lord**, 719 A.2d at 309. "Any issues not raised in a 1925(b) statement will be deemed waived." **Id.** This Court explained in **Riley v. Foley**, 783 A.2d 807, 813 (Pa.Super. 2001), that Rule 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal. This Court has further explained that "a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all." **Commonwealth v. Dowling**, 778 A.2d 683, 686-87 (Pa.Super. 2001). "Even if the trial court correctly guesses the issues Appellants raise[ ] on appeal and writes an opinion pursuant to

---

(10) The economic circumstances of each party at the time the division of property is to become effective.
(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.
(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.
(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S.A. § 3502(a).

that supposition the issues [are] still waived." ***Commonwealth v. Heggins***, 809 A.2d 908, 911 (Pa.Super. 2002).

***Kanter v. Epstein***, 866 A.2d 394, 400 (Pa.Super. 2004), *appeal denied,* 584 Pa. 678, 880 A.2d 1239 (2005), *cert. denied,* ***Spector, Gadon & Rosen, P.C. v. Kanter,*** 546 U.S. 1092, 126 S.Ct. 1048, 163 L.Ed.2d 858 (2006). We have further stated:

> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.
>
> In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all. While [***Commonwealth v. Lord***, 553 Pa. 415, 719 A.2d 306 (1998)] and its progeny have generally involved situations where an appellant completely fails to mention an issue in his Concise Statement, for the reasons set forth above we conclude that ***Lord*** should also apply to Concise Statements which are so vague as to prevent the court from identifying the issue to be raised on appeal....

***Lineberger v. Wyeth***, 894 A.2d 141, 148 (Pa.Super. 2006) (quoting ***Commonwealth v. Dowling***, 778 A.2d 683, 686-87 (Pa.Super. 2001)).

The relevant paragraphs of Appellant's Concise Statement of Errors Complained of on Appeal pertaining to this issue read as follows:

> 6.    The [t]rial [c]ourt abused its discretion and committed an error of law by issuing the Order without considering or discussing any relevant factors for alimony and equitable distribution, specifically and at least the factors enumerated in the Pennsylvania Divorce Code.  *See* 23 Pa.C.S.A. §§ 3502(a), 3506 & 3701(b), (d).

7.      The [t]rial [c]ourt abused its discretion and committed an error of law by not providing the reasons for the terms of the Order in accordance with 23 Pa.C.S.A. §§ 3506, 3701(d) & Pa.R.C.P. 1920.52(a).

The above general averments fail to specify the provision or provisions of the June 5, 2019, Order which Appellant deemed to be unsupported by proper reasoning and which factor(s) would have been applicable thereto. As such, they are not specific enough for the trial court to consider the issues Appellant wishes to raise on appeal.

In addition, despite devoting twenty pages of argument to this claim in his Appellate brief, Appellant does not delineate a specific way in which he deems the equitable distribution award to have been improper. For instance, he fails to specify how an alternative consideration of applicable factors may have resulted in a more favorable equitable distribution for him. Instead, he harkens back to evidence or testimony he claims he was prevented from presenting to the trial court and rehashes his argument that an evidentiary hearing "would have actually provided competent evidence and [Appellant] his due process rights" *see* Brief for Appellant at 60. Appellant reiterates these assertions despite his failure to request the ability to present additional evidence at the time of the hearing or to place an objection on the record at the proper place in the proceedings, or even at the conclusion thereof. For these reasons, this claim is waived.

- 15 -

Notwithstanding, to the extent Appellant may be deemed to have preserved the general issue on appeal that the trial court abused its discretion in fashioning its equitable distribution award, he is not entitled to relief. Our review of a challenge of an equitable distribution award is governed by the following standards:

> A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.
>
> Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence.

*Llaurado v. Garcia-Zapata*, 2019 WL 5955792 at *3 (Pa.Super. Nov. 13, 2019) (citation omitted), *reargument denied* (Jan. 17, 2020).

Initially, we disagree with Appellant's position that the trial court failed to consider any of the 23 Pa.C.S.A. § 3502(a) factors prior to entering its June 5, 2019 Order. Specifically, on May 28, 2019, the trial court reminded the parties that on November 15, 2018, an agreement had been in place to take the Master's recommendation and slightly modify it to reflect the preceding

six months as part of the ultimate resolution of the matter; however, Appellee needed additional time to ponder the agreement. N.T., 5/28/19 at 2-3, 6. The court repeated that it would "use the Master's award because we're sort of using that as a kind of the basis of what we're working from and then there will be certain changes to that." *Id*. at 6.

With regard to the matters still contested by the parties, the trial court explained it was assigning the deficiency judgment to Appellant because "part of the reason that the economic circumstances occurred allowing the mortgage to becomes part of a problem were in large part brought on by [Appellant] and his dishonesty." *Id*. at 5. Significantly, the trial court stated on the record that its alimony award was "[b]ased on all of the review of the factors that the [c]ourt reviewed with counsel back in November." *Id*. at 7.

The court next addressed Appellant's share of Appellee's unreimbursed medical expenses and explained why it felt it would not be fair to have Appellant pay an additional $644 "because had we entered the agreement like we expected to in November of '18 his obligation to pay unreimbursed medical would have ended." *Id*. at 9-10. The trial court also explained its award of arrears on the alimony obligation would put the parties "back into the position we would have been if [sic] had we entered this agreement on the record November of 2018. Husband had agreed to it. . . ." *Id*. at 10-11.

The court ended with a discussion of the proportions according to which it would divide Appellant's pension as well as the issues of loan repayment

obligations to family members and the deficiency judgment. *Id*. at 11-12. The trial court explained it would be assigning the latter obligation to Appellant as he was in the best position to pay it and bore the most responsibility for the fact it had not been paid in a more timely manner. In accordance with discussions from November, the court held Appellee responsible for the loan obligations to her family. *Id*. at 12.

Furthermore, the trial court set forth a more detailed rationale for the entire equitable distribution award in its Opinion. Trial Court Opinion, filed 10/1/19, at 9-25. Following our review of the trial court's reasoning therein, we conclude that it took the relevant statutory provisions into account when fashioning its award. *See Dalrymple v. Kilishek*, 920 A.2d 1275, 1280 (Pa.Super. 2007) (observing that the trial court had set forth a detailed rationale for the equitable reimbursement award in its opinion and upholding that award upon review of that rationale).

Finally, Appellant argues that upon remand, the instant matter should be assigned to a different judge due to the obvious bias of the current trial court. Brief for Appellant at 63-68. In light of our disposition, Appellant's final issue is moot. However, even if it were not, Appellant admittedly did not object or request a recusal before the trial court, *see* Brief for Appellant at 66, and he failed to raise this claim in his Concise Statement of Errors Complained of on Appeal; therefore, it is waived. *See* Pa.R.A.P. 302(a) and *Lord*, *supra*.

- 18 -

Order affirmed.  Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/25/20